IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TRACIE R. LOWE,

               Plaintiff,

vs.                                    Case No. 15-1153-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 27, 2013, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 21-32).  Plaintiff alleges that she had been disabled since October 19, 1974 (R. at 21). Plaintiff meets the insured status requirements for social security disability benefits through September 30, 2003 (R. at

23).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity on or prior to September 30, 2003, except for a brief period in time from January 2002 through May 2002 (R. at 23).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 23).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 24).  After determining plaintiff's RFC (R. at 25-26), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 30).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 30-31).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 31).

**III.  Did the ALJ err by failing to consider whether plaintiff's impairments met or equaled listed impairment 12.05C?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

Plaintiff contends that the ALJ erred by failing to consider whether plaintiff's impairments met or equaled listed impairment 12.05C (Doc. 17 at 5-11).  Listed impairment 12.05C is as follows:

> 12.05 *Intellectual disability:*  Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
>
> ********************
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2015 at 516-517). In order to satisfy listed impairment 12.05C, plaintiff must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence must demonstrate or support onset of the impairment before age 22 (a.k.a. the "capsule" definition), (2) a valid verbal, performance or full scale IQ of 60-70, and (3) a physical or other mental impairment imposing an additional and significant

6

work-related limitation of function.  Wall v. Astrue, 561 F.3d
1048, 1062 (10ᵗʰ Cir. 2009).

In his decision, the ALJ never mentioned or discussed
listed impairment 12.05C.  At the hearing on December 12, 2012,
plaintiff's counsel stated that "there could be some issue of
12.05(C), but there hasn't been any IQ testing but there is a
history of low cognitive function" (R. at 43).  Subsequent to
the hearing, but prior to the ALJ decision, Dr. Moeller, a
licensed psychologist, performed a psychological evaluation on
March 12, 2013, in which IQ testing was performed (R. at 601-
614).  The testing indicated that plaintiff had a verbal
comprehension score of 74 and a full scale score of 74 (R. at
607).[1]  The ALJ discussed the report from Dr. Moeller (R. at 28),
but never discussed listed impairment 12.05C in his decision.

Plaintiff claims that the ALJ should have considered POMS
§ DI 24515.056(D)(1)(c), which states as follows concerning
listed impairment 12.05C:

> Listing 12.05C is based on a combination of
> an IQ score with an additional and
> significant mental or physical impairment.
> The criteria for this paragraph are such
> that a medical equivalence determination
> would very rarely be required.  However,
> slightly higher IQ's (e.g., 70-75) in the
> presence of other physical or mental
> disorders that impose additional and
> significant work-related limitation of

---

[1] These two scores were the lowest of the 5 IQ scores in the testing by Dr. Moeller.  According to the regulations,
when more than one IQ score is derived from the test administered, the agency uses the lowest of these in
conjunction with 12.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1(D)(6)(c) (2015 at 513).

> function may support an equivalence
> determination.  It should be noted that
> generally the higher the IQ, the less likely
> medical equivalence in combination with
> another physical or mental impairment(s) can
> be found.

(http://secure.ssa.gov/poms.nsf/lnx/0424515056, September 9, 2016).

The Program Operations Manual System (POMS) is a policy and procedural manual that employees of the Social Security Administration use in evaluating social security claims. Although the POMS does not have the force and effect of law, it is nevertheless a persuasive interpretation by the Commissioner of binding statutory and regulatory law. Davis v. Secretary of Health & Human Services, 867 F.2d 336, 340 (6th Cir. 1989); Stillwell v. Sullivan, 1992 WL 401971 at *6 (D. Kan. Dec. 30, 1992)(Belot, D.J.).  The court's review of an agency's interpretation of a statute or regulation it administers is highly deferential.  The agency's interpretation, as set out in a POMS, is given controlling weight unless it is arbitrary, capricious, or contrary to law.  In other words, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulations.  McNamar v. Apfel, 172 F.3d 764, 766, 767 (10th Cir. 1999).

In the case of Shontos v. Barnhart, 328 F.3d 418, 424-425 (8th Cir. 2003), the claimant had an IQ of 72.  Despite the fact

that the court had previously stated that an ALJ should consider the POMS guidelines, the court found no evidence that the ALJ considered the POMS guidelines.  There is no evidence in the case before the court that the ALJ considered the POMS guideline set forth above.

However, it is plaintiff's burden at step three to present evidence establishing his/her impairments meet or equal a listed impairment.  Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  Medical equivalence is defined in 20 C.F.R. § 404.1526(a,b)(2015 at 381-382).  Furthermore, 12.05C includes a capsule definition that intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  In the case of Crane v. Astrue, 369 Fed. Appx. 915, 921 (10th Cir. Mar. 17, 2010), the court, citing to DI 24515.056(B)(1), held that the above POMS is used only when the capsule definition of the listed impairment is satisfied.  In the absence of any evidence that a claimant met the capsule definition, there is no need to consider this POMS.

The POMS indicates that slightly higher IQs (e.g. 70-75) in the presence of other physical or mental disorder that impose additional and significant work-related limitation of function

may support an equivalency determination.  The testing by Dr.
Moeller indicates IQ scores (verbal and full scale) of 74.  The
ALJ found that plaintiff had other severe impairments, including
degenerative disc disease, lumbar spine; and obesity (R. at 23).[2]
Thus, the critical question is whether plaintiff satisfies the
capsule definition of listed impairment 12.05C.

    As noted above, the capsule definition for listed
impairment 12.05C is that intellectual disability refers to
significantly subaverage general intellectual functioning with
deficits in adaptive functioning initially manifested during the
developmental period; i.e., the evidence demonstrates or
supports onset of the impairment before age 22.  Plaintiff is 38
years old (she was born on October 19, 1974, R. at 601).
According to the ALJ, she has a 10th grade education, and
attended special education classes for a learning disorder (R.
at 26).  School records from April 1984, when plaintiff was in
the 3rd grade, indicate on the Iowa Test of Basic Skills that her
composite score was 1% in the national percentile.  Other scores
were in the 2-3% percentile range (R. at 279).  Plaintiff's work
record is very limited.  Although turning 18 in 1992,
plaintiff's only earnings were in 1991 and 1999-2002 (R. at

---

[2] Listed impairment 12.05C requires that a claimant have a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  In Hinkle, the court held that this requirement is met if the claimant suffers from a severe physical or other mental impairment as defined at step two of the disability analysis, apart from the decreased intellectual functioning. 132 F.3d at 1352.

192).  As the ALJ found, she only earned enough to constitute substantial gainful activity for 5 months in 2002 (R. at 23).

In the case of Barnes v. Barnhart, 116 Fed. Appx. 934, 941 (10th Cir. Nov. 26, 2004), the record showed that the claimant in that case finished the 10th grade, then quit.  She was in special education classes most of her way through school.  Her Iowa Basic Skills results in March 1990, when she was 13, showed low scores (bottom 10th percentile) in almost every category.  On the facts of this case, the court found that the ALJ's summary analysis that plaintiff's daily activities, social life, and her educational life fail to show deficits in adaptive behavior to meet the capsule definition for listed impairment 12.05C was not supported by the evidence.

A successful work history is evidence that would establish that plaintiff's impairment does not meet the capsule definition.  Bland v. Astrue, 432 Fed. Appx. 719, 723 (10th Cir. April 27, 2011)(6 years); Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)(2 years).  By contrast, in the case before the court, the ALJ found that plaintiff, who turned 18 years of age in 1992, performed substantial gainful activity for only 5 months in 2002 (R. at 23), and had no earnings from 1992-1998, and no earnings after 2002 (R. at 192).

As was the case in Barnes, plaintiff in this case was in special education classes and only finished the 10th grade.

11

Also, her test scores on the Iowa Basic Skills test were very low, in the bottom 1% to 3%. Finally, plaintiff's work record is extremely limited. She has only engaged in SGA for 5 months since 1992, when she turned 18 years of age, and did not record any earnings from 1992-1998 and after 2002. On these facts, the court finds substantial evidence exists that would support a finding that plaintiff's impairments met the capsule definition of 12.05C.

Plaintiff's IQ testing showed two scores of 74, and according to POMS § DI 24515.056(D)(1)(c), IQ scores of 70-75 in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. Case law, as set forth above, indicates that an ALJ should consider the POMS guidelines.

Furthermore, the ALJ found other severe impairments at step two, which satisfies the requirement for a physical or other mental impairment imposing an additional and significant work-related limitation of function. In addition, plaintiff's counsel, at the hearing, and prior to the report from Dr. Moeller, argued that there could be some issue regarding the application of listed impairment 12.05C, but noted that there had not been any IQ testing at that point.

Although the ALJ pointed out that Dr. Moeller concluded
that plaintiff had borderline intellectual functioning (and did
not find intellectual disability)(R. at 28, 610), this finding
by Dr. Moeller must be considered in light of the entire report
from Dr. Moeller.  Dr. Moeller opined that plaintiff was
markedly impaired in concentration, persistence, and pace,
noting her difficulty with short-term memory and the relatively
slow pace observed in her cognitive processing.  The ALJ never
mentioned this opinion by Dr. Moeller, and instead found
plaintiff only moderately limited in concentration, persistence,
and pace (R. at 25).  The ALJ also failed to mention that Dr.
Moeller stated that plaintiff's ability to adapt to the stresses
of the work place environment is also markedly impaired (R. at
610).  Dr. Moeller also opined that plaintiff was "at least
moderately impaired" in social functioning, noting that her
tolerance for frustration is such that she demonstrates
irritability much sooner than would be expected.  Dr. Moeller
indicated that this quality is not likely to be appreciated in
the general work place, and questioned whether it would be
tolerated or allowed at all in some work settings (R. at 610).
The ALJ, without mentioning this opinion of Dr. Moeller, found
that plaintiff only had mild difficulties in social functioning
(R. at 25).  If the RFC assessment conflicts with an opinion
from a medical source, the ALJ must explain why the opinion was

not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  The ALJ did not discuss and offered no explanation for not adopting these opinions of Dr. Moeller.

Dr. Moeller concluded that, although functioning in the borderline range, it is questionable if plaintiff would be able to be successful in obtaining and sustaining sedentary employment (R. at 610).  These opinions by Dr. Moeller are clearly relevant to the requirement in listed impairment 12.05C and POMS § DI 24515.056(D)(1)(c) of another mental impairment imposing an additional and significant work-related limitation of function, and to the determination of whether plaintiff's impairments are medically equivalent to listed impairment 12.05C.

On the facts of this case, the court cannot say that no reasonable factfinder could conclude that plaintiff's impairments do not meet or equal listed impairment 12.05C.[3]  For this reason, the ALJ, after receipt of Dr. Moeller's report and IQ testing, and in light of the other evidence set forth above,

---

[3] Courts should apply the harmless error analysis cautiously in the administrative review setting.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  <u>Fischer-Ross</u>, 431 F.3d at 733-734; <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004).

erred by failing to consider whether the evidence supported a
finding that plaintiff's impairment met or equaled listed
impairment 12.05C.  This case shall therefore be remanded in
order for the ALJ to make a determination of whether plaintiff's
impairments meet or equal listed impairment 12.05C.

**IV.  Did the ALJ err by failing to follow SSR 83-20?**

Plaintiff also argues that the ALJ erred by failing to
follow SSR 83-20 regarding an onset date of disability.
Regarding SSR 83-20, this court has previously held that SSR 83-
20 governs the determination of the onset of a disability.  1983
WL 31249.  The use of SSR 83-20 is predicated on a finding that
plaintiff was disabled at some point.  There was no finding in
this case that plaintiff was disabled at some point.  Thus, SSR
83-20 is not applicable in this case, unless on remand, the ALJ
makes a finding that plaintiff was disabled at some point.  Lane
v. Astrue, Case No. 10-1080-SAC, (D. Kan. March 24, 2011, Doc.
17 at 16); Brown v. Astrue, Case No. 07-1075-MLB, 2008 WL 90070
at *3 (D. Kan. Jan. 2, 2008, Doc. 13 at 7-8).

**V.  Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence.  However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the

guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the

record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The court finds numerous problems with the ALJ's credibility analysis which must be addressed when this case is remanded.  The ALJ stated that the evidence, including plaintiff's work history, demonstrates that that the claimant has functioned fairly well prior to the date last insured despite the diagnosis of borderline intellectual functioning (R.

at 28).  However, as set forth above, plaintiff's work history
is, in fact, quite limited, as plaintiff, who turned 18 in 1992,
only engaged in SGA for 5 months in 2002, and had no earnings
from 1992-1998 and after 2002.  This clearly does not support a
determination that plaintiff has functioned fairly well insofar
as her work history is concerned.

Furthermore, according to the regulations, activities such
as taking care of yourself, household tasks, hobbies, therapy,
school attendance, club activities or social programs are
generally not considered to constitute substantial gainful
activity.  20 C.F.R. § 404.1572(c) (2013 at 399).  Furthermore,
although the nature of daily activities is one of many factors
to be considered by the ALJ when determining the credibility of
testimony regarding pain or limitations, Thompson v. Sullivan,
987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind
that the sporadic performance of household tasks or work does
not establish that a person is capable of engaging in
substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324,
1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in
household chores, including laundry, grocery shopping, mowing,
cooking, mopping and sweeping.  The ALJ concluded that
claimant's allegations of disabling pain were inconsistent with

her reports of her normal daily activities and were therefore
not deemed credible.  The court found that substantial evidence
did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work**.  As we said in McCoy v. Schweiker, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc),
> the test is whether the claimant has "the
> ability to perform the requisite physical
> acts day in and day out, in the sometimes
> competitive and stressful conditions in
> which real people work in the real world."
> In other words, evidence of performing
> general housework does not preclude a
> finding of disability.  In Rainey v. Dep't
> of Health & Human Servs., 48 F.3d 292, 203
> (8th Cir.1995), the claimant washed dishes,
> did light cooking, read, watched TV, visited
> with his mother, and drove to shop for
> groceries.  We noted that these were
> activities that were not substantial
> evidence of the ability to do full-time,
> competitive work. In Baumgarten v. Chater,
> 75 F.3d 366, 369 (8th Cir.1996), the ALJ
> pointed to the claimant's daily activities,
> which included making her bed, preparing
> food, performing light housekeeping, grocery
> shopping, and visiting friends.  We found
> this to be an unpersuasive reason to deny
> benefits: **"We have repeatedly held...that
> 'the ability to do activities such as light
> housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work.'"** Id. (quoting Hogg v. Shalala, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner
>
> > **that to find a claimant has the
> > residual functional capacity to
> > perform a certain type of work,**

> **the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court stated:

> [The ALJ] attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases [citations omitted]."

705 F.3d at 278.

On remand, the ALJ should consider plaintiff's activities in light of the case law set forth above in order to determine

if she is capable of engaging in substantial gainful activity.
The activities described by the ALJ (R. at 28) do not clearly
establish that plaintiff can work at a competitive level over an
8 hour day.  As for watching television, that is hardly
inconsistent with allegations of pain and related limitations.
See Krauser, 638 F.3d at 1333.

Furthermore, on remand, the ALJ should consider the portion
of the report from Dr. Moeller, which stated that one of his
staff members had recently seen plaintiff (then age 38) pushing
a shopping cart in a grocery store.  The staff member indicated
that plaintiff leaned on the shopping cart for support "like a
70-year old woman" (R. at 609).  Dr. Moeller noted that this
statement from his employee corroborated plaintiff's assertion
that when she shopped she used a shopping cart for support 99%
of the time (R. at 609).

In his decision, the ALJ also notes that a CT revealed a
bulging disc.  The ALJ stated that this result does not
corroborate with the claimant's allegation of disabling pain (R.
at 29).  However, the ALJ fails to provide any evidentiary or
medical basis for this conclusion.  An ALJ is not entitled to
sua sponte render a medical judgment without some type of
support for his determination.  The ALJ's duty is to weigh
conflicting evidence and make disability determinations; he is

not in a position to render a medical judgment.  <u>Bolan v.</u>
<u>Barnhart</u>, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed and remanded pursuant to sentence four
of 42 U.S.C. § 405(g) for further proceedings consistent with
this memorandum and order.

Dated this 16th day of September 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge